FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STEVE KLEIN; AARON BAGLEY;
ROXANN BAGLEY; LINDA BEBEE;
MICHAEL BEBEE; CHRIS BELL; GARY
CASS; ISAAC CASS; JOSHUA CASS;
FRANK DAWSON; RUSS DEARBORN;
DAVID KIDDER; LORRAINE KLEIN;
PHIL MAGNAN; CINDY MOLES; JACK
OBEN; SANDRA OLAFSON; JUDITH
OLAFSON; MARIN OLAFSON, a minor
through her guardian ad litem,
Judith Olafson; TARYN OLAFSON, a
minor through her guardian ad
litem, Judith Olafson; TED
SKELTON; ALLYSON SMITH;
ANTHONY SOTILLE; DANIEL
STEPHENS, aka Daniel Stevens;
RALPH THOMPSON,
            *Plaintiffs-Appellants,*

                v.

SAN DIEGO COUNTY; DOES 1-100,
            *Defendants-Appellees.*

No. 04-55819

D.C. No.
CV-03-01896-RMB

OPINION

Appeal from the United States District Court
for the Southern District of California
Rudi M. Brewster, District Judge, Presiding

Argued and Submitted
December 6, 2005—Pasadena, California

Filed September 18, 2006

11457

Before: Harry Pregerson, Robert E. Cowen,* and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Pregerson

---

*The Honorable Robert E. Cowen, Senior United States Circuit Judge
for the Third Circuit, sitting by designation.

**COUNSEL**

Michael J. Kumeta, La Mesa, California, for the plaintiffs-appellants.

William A. Johnson, Jr., Senior Deputy County Counsel's Office, San Diego, California, for the defendant-appellee.

**OPINION**

PREGERSON, Circuit Judge:

Plaintiffs challenge the constitutionality of a residential picketing ordinance enacted by the Defendant San Diego County ("the County"). Because we conclude that the ordinance is not unconstitutional in every conceivable application and is not unconstitutionally vague, we affirm the district court's order dismissing Plaintiffs' constitutional claims.

## I. Factual Background

In 2002, the County passed an ordinance to regulate the conduct of people wanting to picket in residential neighbor-

hoods. The ordinance reads: "No person shall engage in picketing activity that is targeted at and is within three hundred (300) feet of a residential dwelling in the unincorporated areas of the County of San Diego." San Diego County Code § 311.103. Violation of the ordinance is punishable as a misdemeanor. *Id.* § 311.104.

On September 13, 2003, Plaintiffs went to a residential neighborhood in an unincorporated area of San Diego County, a neighborhood that included the home of August Caires, General Manager of the Padre Dam Municipal Water District. During a water district board meeting, Deborah Baczynski, a water district employee, had ridiculed Joel Anderson, a member of the water district board who suffers from Bells-Palsy, by pulling down one side of her face with her hands and speaking in slurred speech, mimicking the effects of Bells-Palsy on Anderson. Plaintiffs were upset that Caires did not reprimand Baczynski. They decided to picket outside Caires's home with three goals: (1) to convince Caires to set up a third-party investigation of abuses against disabled persons, (2) to ensure that such conduct did not occur in the future, and (3) to educate neighbors and the public at large about the water district's discrimination against the disabled.

Appellants held signs and walked a circuitous route the length of the block that included Caires's home. After a short period, two deputy sheriffs from the County ordered Plaintiffs to move at least 300 feet away from Caires's property line and threatened to arrest Plaintiffs if they did not move.[1] Plaintiffs ended their demonstration and left.

All parties agree that the officers misinterpreted the County's picketing ordinance. The ordinance requires that picketers remain at least 300 feet from the targeted *dwelling*, not 300 feet from the property line of the targeted residence. It was later shown that Caires's dwelling is set back more than 300

---

[1]The record shows that Plaintiffs called the police themselves.

feet from the property line. As such, Plaintiffs' actions on September 13, 2003 did not violate the ordinance.

Plaintiffs filed a complaint that raised both facial and as applied challenges to the ordinance. Plaintiffs asked for a declaratory judgment that the ordinance violated their free speech and due process rights under the United States and California Constitutions. They also requested injunctive relief and monetary damages. On November 19, 2003, the district court granted a preliminary injunction that temporarily prohibited the County from enforcing the ordinance.

The district court held a hearing on the constitutionality of the ordinance on December 9, 2003. On December 29, 2003, the district court made a fact-finding "field trip" to four residences in the County and to a football field. At the various locations, the court had court personnel stand at the 300-foot boundary, hold signs, and make noise so that it could determine the impact of the ordinance.

Based on its trip, the court made several factual determinations. First, it found that at each of the four homes, occupants of the house could not see picketers or signs at 300 feet away because there was no line-of-sight between the homes and the picketers.[2] At the football field, the court found that a person could see the signs 300 feet away, but could not read them with the naked eye. The court also found that, on an empty football field, a person could only hear "a little underground sound" if the "picketers" spoke at a conversational tone at a distance of 300 feet. If they "raised their voice a little bit" the

---

[2]The parties submitted maps for the record showing the impact of the ordinance at various residential sites. At one site, a house located on a cul-de-sac, picketers could not be on the cul-de-sac where the house was located or on the road that accessed the cul-de-sac, but could picket around the corner from the house. At a second site, picketers could protest on the same street six lots away from the targeted residence or on a connecting road, three lots away. As already mentioned, at Caires's home, picketers could be directly in front of the targeted residence.

court could tell "that there was activity there." And, when the picketers were yelling, the court could hear and understand their message.

On March 30, 2004, the court issued its decision. The court found that Plaintiffs had standing to bring their facial challenges to the ordinance, but not an as applied challenge. It then denied their facial challenge on the merits. First, the court rejected the Plaintiffs' argument that the ordinance was impermissibly vague. It found that a person of ordinary intelligence would understand how the 300-foot distance was measured. In response to Plaintiffs' argument that the statute is vague because no public record indicated how far dwellings are set back from the property line, the court found that: (a) if there were no "no trespassing" sign, a picketer could walk up to the house and measure the distance; (b) a would-be picketer could use a hand-held rangefinder, topographical map, or public record to measure 300 feet from the residence; or (c) a would-be picketer could measure the distance in an adjacent area and then "estimate very ably" the 300-foot distance.

Second, the court held that the ordinance was a reasonable time, place, and manner restriction, because the 300-foot ordinance was narrowly tailored to a significant government interest, namely, preventing "intrusion upon the right to privacy in the home." The court stated that "so long as the targeted picketing interferes with an individual's residential privacy rights, the government has a significant interest in regulating the speech." The court further noted that "[t]he Constitution does not . . . require the occupants to come in from their porches or decks, shut their windows and doors, and draw their shades in an effort to avoid targeted picketing activity." Rather, "occupants are entitled to unencumbered enjoyment of the tranquility and privacy of their homes without being subjected to unwelcome speech, and the First Amendment may not trample those rights." Because the ordinance "does not completely shield a resident from awareness of undesired targeted picket-

ing," the court concluded that the ordinance was a reasonable time, place, and manner restriction on speech. The district court dismissed Plaintiffs' constitutional claims and dissolved the temporary injunction. Plaintiffs filed a timely appeal to this court.

## II.  Analysis

This case presents a facial challenge to the County's ordinance on First Amendment grounds. Accordingly, we review the district court's decision de novo. *See United States v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996).

[1] An ordinance is facially unconstitutional only if "it is unconstitutional in every conceivable application, or . . . seeks to prohibit such a broad range of protected conduct that it is unconstitutionally 'overbroad.' " *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 796 (1984). Plaintiffs raise three challenges to the County's ordinance: (a) that the ordinance is not a valid time, place, and manner restriction; (b) that the ordinance is overbroad; and (c) that the ordinance is unconstitutionally vague.[3]

### A.   Invalid Time, Place, and Manner Restriction Challenge

[2] To determine the proper analysis for Plaintiffs' claims, the threshold question is the nature of the forum in which the ordinance limits speech. The level of restriction that can be placed on speech depends on whether the forum is a traditional public forum, a limited public forum, or a nonpublic

---

[3]The district court found, and neither party disputes on appeal, that Plaintiffs have standing to bring a facial challenge to the statute. Because "the plaintiff[s] ha[ve] alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder," we agree with the district court that they have standing to bring their claims. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).

forum. *See Cornelius v. NAACP Legal Def. and Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985).

**[3]** The Supreme Court noted in *Frisby v. Schultz*, 487 U.S. 474 (1988), that public streets are "the archetype of a traditional public forum." *Id.* at 480. " 'Time out of mind' public streets and sidewalks have been used for public assembly and debate, the hallmark of a traditional public forum." *Id.* (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)). Moreover, *Frisby* held that a street does not lose its status as a public forum "simply because it runs through a residential neighborhood." *Id.* It is well-settled, then, that the residential streets and sidewalks covered by the County's ordinance are public fora.

**[4]** The proper analysis for a challenge to an ordinance that restricts speech in a public forum is whether the restriction is a valid time, place, and manner restriction on speech. *Perry*, 460 U.S. at 45. A time, place, and manner restriction on speech is valid if it: (a) is content neutral, (b) is narrowly tailored to serve a significant government interest, and (c) leaves open ample alternative channels for communication. *Id.* Again, because Plaintiffs raise a facial challenge, we cannot strike down the ordinance unless it is "unconstitutional in every conceivable application." *See Taxpayers for Vincent*, 466 U.S. at 796.

### 1.   *Content Neutral*

**[5]** Plaintiffs concede, as they must, that the ordinance is content neutral on its face; the ordinance prohibits residential picketing within a certain zone no matter what the topic of the protest or the viewpoint of the protester. As such, this first prong is not disputed.

### 2.   *Narrowly Tailored to Serve a Significant Government Interest*

**[6]** It is not disputed that the government has an interest in protecting residential tranquility. In *Frisby*, the Supreme Court considered a Brookfield, Wisconsin residential picketing ordinance that prohibited picketing directly in front of a targeted residence. *See* 487 U.S. at 483. The Court discussed the nature of the right to residential privacy in broad terms:

> The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society. Our prior decisions have often remarked on the unique nature of the home, the last citadel of the tired, the weary, and the sick, and have recognized that preserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value.

*Id.* at 484 (internal quotation marks and citations omitted).

At the same time, the Court recognized the "careful scrutiny" given to restrictions on public issue picketing, given the importance of "uninhibited, robust, and wide-open debate on public issues." *Id.* at 479 (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)). Accordingly, it defined more specifically the "evil" to be prevented by residential picketing ordinances: that such picketing might render the targeted resident a captive audience to unwanted speech. *See id.* at 484-85, 487 ("[I]ndividuals are not required to welcome unwanted speech into their own homes and . . . the government may protect this freedom."). Having defined the right this way, the Court upheld a facial challenge to the Brookfield ordinance, because picketing directly in front of the home would make the targeted resident captive in the residence. *See id.* at 487 ("The target of the focused picketing banned by the Brookfield ordinance is just such a 'captive.' The resident is figuratively, and perhaps literally, trapped within the home, and

because of the unique and subtle impact of such picketing is left with no ready means of avoiding the unwanted speech.").

This narrowed definition of the right to residential privacy was reiterated in *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753 (1994). In *Madsen*, the Court considered an injunction that prohibited picketing within 300 feet of the residence of abortion clinic employees. *See id.* at 774. The Court noted, again, that the house is the "last citadel of the tired, the weary, and the sick." *Id.* at 775 (quoting *Frisby*, 487 U.S. at 484). It found, however, that the 300-foot prohibition was "much larger" than the zone of protection provided in *Frisby*. It held that the ordinance burdened more speech than necessary to protect the government's interest because "limitation[s] on the time, duration of picketing, and number of pickets outside a smaller zone could have accomplished the desired result." *Id.* Such measures would both protect residents from being a captive audience in the home and protect picketers' First Amendment rights.[4] Thus, the Court found this provision of the injunction to be unconstitutional.

The combined teaching of *Frisby* and *Madsen* is that the government's interest in residential privacy does not trump all other rights. The government certainly has a significant interest in preventing picketing that renders the targeted resident a captive audience to the picketers' message. But the right to residential privacy does not encompass a right to remain blissfully unaware of the presence of picketers. *See Murray v. Lawson*, 649 A.2d 1253, 1267 (N.J. 1994) ("[K]eeping [pick-

---

[4]*Madsen* does not necessarily foreclose the County's argument that its 300-foot zone is proper. In *Madsen*, the Court was reviewing the constitutionality of an injunction, which must be "no more burdensome . . . than necessary" to protect the government interest. *Id.* at 765. In contrast, a generally applicable ordinance must be "narrowly tailored" to the government's interest. *Id.* at 764. The standard governing ordinances is less stringent than the standard governing injunctions, *see id.*, although neither the Supreme Court nor this court has articulated a practical distinction between the two standards.

eters] at such a great distance, thereby rending [the resident's] awareness of the picketing most unlikely as a practical matter, is unnecessary to protect [the resident's] residential-privacy interest").

**[7]** Thus the district court erred when it stated that residential occupants are entitled to "an unencumbered enjoyment of the tranquility and privacy of their homes." Instead, residential picketing ordinances must carefully balance two valid and competing interests: the right of residents not to be captive audiences to unwanted speech and the right of picketers to convey their message. *See Frisby*, 487 U.S. at 487. Residential picketing ordinances require a more nuanced approach than the one implied by the district court's formulation of the right to residential privacy.

Even though we disagree with the district court on this point, we nonetheless affirm its conclusion that Plaintiffs cannot state a valid facial challenge to the County's ordinance. The ordinance *is* problematic in several aspects: The 300-foot ban imposed by the County will, in many cases, put picketers farther away from the targeted residence than they would be under those ordinances that have been deemed constitutional by other courts. *See Thorburn v. Austin*, 231 F.3d 1114, 1120 (8th Cir. 2000) (upholding an ordinance that prohibited picketing within fifty feet of the targeted resident's property line, but that allowed picketing on the sidewalk across the street from the targeted residence); *Douglas v. Brownell*, 88 F.3d 1511, 1520-21 (8th Cir. 1996) (upholding an ordinance that banned picketing in front of the targeted house and one house on either side, but that permitted picketing on the sidewalk across the street from the targeted residence); *see also Kirkeby v. Furness*, 92 F.3d 655, 660 (8th Cir. 1996) (striking down an ordinance that banned picketing within 200 feet of a targeted residence); *Murray*, 649 A.2d at 1267-68 (striking down an injunction that banned picketing within 300 feet of the targeted residence).[5] In addition, the ordinance imposes a

---

[5]In defending its ordinance, the County points to the California Court of Appeal's decision in *City of San Jose v. Superior Court*, 38 Cal. Rptr.

one-size-fits-all approach to residential picketing, which in some cases will allow picketing directly in front of the targeted home if the home is situated on a large lot, but will put the picketers several lots away from the targeted audience if the residence is situated on a small lot. Moreover, as in *Madsen*, the ordinance does not consider more limited restrictions, such as limitations on the number of picketers, the time of day, or the duration of picketing.

**[8]** Despite the problematic aspects of the ordinance, we cannot say that the ordinance is unconstitutional in every application, primarily because the ordinance did not have an unconstitutional effect in the test case that led to the instant suit. A correct interpretation of the ordinance would have allowed Plaintiffs to picket on the sidewalk or street directly in front of Caires's home, or anywhere else in the neighborhood, because Caires's home was set back more than 300 feet from the street. Thus, for all practical purposes, had the officers correctly interpreted the ordinance, the ordinance would have had no impact on the Plaintiffs' right to picket at Caires's residence. Had a *Frisby* ordinance been in place in the County, Plaintiffs would have been pushed *farther* away

_____

2d 205 (Ct. App. 1995), which upheld an ordinance banning picketing within 300 feet of a targeted residence. We believe *City of San Jose* wrongly characterized the right at issue — it concluded that residential picketing is "highly offensive conduct," a "disfavored activity not entitled to a high level of First Amendment protection." *Id.* at 209, 210. Contrary to the California court's characterization, the United States Supreme Court has called public issue picketing on streets and sidewalks "an exercise of . . . basic constitutional rights in their most pristine and classic form." *Carey v. Brown,* 447 U.S. 455, 466-67 (1980) (alteration in original) (quoting *Edwards v. South Carolina*, 372 U.S. 229, 235 (1963)). Moreover, *Frisby* and *Madsen* make clear that residential picketing enjoys First Amendment protection. While *Frisby* noted that targeted picketing is inherently intrusive on residential privacy, it did not suggest that, where the two clash, the right to residential privacy necessarily trumps the rights of picketers. *See Frisby*, 487 U.S. at 486. That is to say, residential picketing is not the black sheep of the First Amendment family.

from the residence than they were under the County's ordinance. Courts have accepted ordinances that prohibit picketing directly in front of the targeted resident's home. *See, e.g.*, *Frisby*, 487 U.S. at 483 ("[O]nly focused picketing taking place solely in front of a particular residence is prohibited."); *Vittitow v. City of Upper Arlington*, 43 F.3d 1100, 1105 (6th Cir. 1995) (noting that "any linear extension beyond the area 'solely in front of a particular residence' is at best suspect, if not prohibited outright"). Because the ordinance functions as a more narrow prohibition than the one at issue in *Frisby* in *some* circumstances, we cannot say that the ordinance is unconstitutional in every application. Plaintiffs' claim is therefore not appropriate for a facial challenge.[6]

### 3. *Leaves Open Ample Alternatives for Communication*

In the alternative, Plaintiffs claim that the ordinance is unconstitutional because it does not leave open adequate alternatives to communicate to the targeted resident and to the resident's neighbors. The County contends that the ordinance leaves open the opportunity for general dissemination of the picketer's message, including picketing in other neighborhoods, direct mail and telephone contact with those in the neighborhood, and, of course, picketing more than 300 feet from the targeted residence.

[9] A valid time, place, and manner restriction must leave open alternative methods of communication. An alternative method of communication is "constitutionally inadequate if

---

[6]Plaintiffs urge us to ignore their technical failure to violate the ordinance in their test case, because the district court created a thorough record regarding the effect of the residential picketing ordinance. We appreciate the district court's extensive efforts to study the effect of the ordinance. Its careful study gave us a fuller picture of the ordinance's impact. But we cannot ignore the circumstances giving rise to this suit because they clearly show that the ordinance is not unconstitutional in every application.

the speaker's ability to communicate effectively is threatened." *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1229 (9th Cir. 1990) (internal citations and quotations omitted). While a picketer has no right to force speech on those who do not want to hear it, *see Frisby*, 487 U.S. at 487, "the First Amendment protects the right of every citizen to reach the minds of *willing listeners* and to do so there must be opportunity to win their attention." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 655 (1981) (emphasis added, internal citations and quotations omitted). An alternative is inadequate if it precludes the speaker from getting the attention of willing listeners in a specific intended audience. *Bay Area Peace Navy*, 914 F.2d at 1229.

**[10]** While we admit that Plaintiffs may, in some cases, have a special interest in reaching willing listeners in the target resident's neighborhood, we must deny Plaintiffs' claim for the same reason that we deny their narrowly tailored challenge. That is, Plaintiffs have not shown that the ordinance impacts their ability to communicate with willing listeners in *every* case. In some cases, as was the case in Caires's neighborhood, the ordinance would have no impact on Plaintiffs' ability to communicate their message to Caires or Caires's neighbors. Without violating the ordinance, Plaintiffs could demonstrate directly in front of Caires's home or could picket throughout the neighborhood to educate Caires's neighbors about the actions of the water district. Because the ordinance leaves ample alternatives for communication in at least *some* cases, including the test case before us, we cannot say that the ordinance is unconstitutional in every application. Accordingly, Plaintiffs' facial challenge fails.

**B.   Overbreadth Challenge**

**[11]** Plaintiffs also argue that the County's ordinance is unconstitutionally overbroad. While a facial challenge on time, place, and manner grounds asserts that the statute is unconstitutional in every conceivable application, an over-

breadth challenge asserts that the restriction's scope includes a substantial amount of protected conduct. A law is overbroad if it "does not aim specifically at evils within the allowable area of State control but, on the contrary, sweeps within its ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech . . . ." *Thornhill v. Alabama*, 310 U.S. 88, 97 (1940); *see also Clark v. City of Los Angeles*, 650 F.2d 1033, 1039 (9th Cir. 1981). Because a facial overbreadth challenge is a strong remedy, the "mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Taxpayers for Vincent*, 466 U.S. at 800. Rather, the Supreme Court has required that the overbreadth "not only be real, but *substantial* as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973) (emphasis added).

Plaintiffs' overbreadth challenge rests on the contention that the County's ordinance bans messages that the targeted resident wants to receive. Plaintiffs offer several examples. First, Plaintiffs argue that the ordinance would prohibit a little league team holding a "Get Well Soon Tommy" sign in front of their teammate's house. *See Frisby*, 487 U.S. at 496-97 (Stevens, J., dissenting) (noting that a child carrying a sign reading " 'Get Well Charlie — Our Team Needs You' " was unlawful conduct under the majority's interpretation of the residential picketing ordinance). Second, Plaintiffs claim that the ordinance would prevent a child from protesting on the sidewalk in front of her parent's house, even if her parents encouraged such a demonstration as training in social activism. And, finally, Plaintiffs allege that the ordinance would cover a picketer who wished to "target" a neighborhood to warn them about some danger in a neighborhood, for example, that a sex offender had moved in nearby.

[12] We believe the strong remedy of striking this ordinance down on overbreadth grounds is not called for here. First, we note that the ordinance prohibits only picketing tar-

geted at a *single* residential dwelling. *See* San Diego County Code § 311.102 (defining targeted picketing as picketing "targeted at a particular residential dwelling"). The "Purposes and Intents" section of the ordinance confirms this interpretation: "This ordinance is not intended to preclude the right to picket in a residential area generally and in such a manner that does not target or focus upon a particular residence or household." *Id.* § 311.101(f). Thus, if the goal of the picketing is to reach an entire neighborhood with a message, the ordinance would not apply.

**[13]** Second, the ordinance is unlikely to have any substantial effect on truly welcome picketing. If the message is desired by the targeted resident, it is unlikely that the police would be called to enforce the ordinance. And even if police threatened to enforce the ordinance, the resident who wished to hear the speech could simply invite the picketers onto their private property. *See Thorburn v. Roper*, 39 F. Supp. 2d 1199, 1214 (D. Neb. 1999). Because there is no "realistic danger that the statute itself will significantly compromise recognized First Amendment protection," *Taxpayers for Vincent*, 466 U.S. at 801, the Plaintiffs' facial overbreadth challenge is denied.

## C.   Vagueness Challenge

**[14]** An ordinance is unconstitutionally vague "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Where a case involves the First Amendment, a greater degree of specificity and clarity is required. *See Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1150 (9th Cir. 2001). At the same time, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989).

Plaintiffs allege that the County's ordinance is unconstitutionally vague in that it is impossible to determine, from pub-

lic records or by any other means, where the boundary of the 300-foot zone lies. They argue that picketers are forced to guess whether they are obeying the ordinance. They also point out that the statute contains no scienter element that might protect protesters from an honest mistake as to whether they were violating the ordinance.

[15] As the district court noted, the language of the statute itself is not ambiguous. Thus, this is not the typical vagueness challenge where ambiguous text makes it difficult to determine what conduct is proscribed. But the ordinance might nonetheless be unconstitutionally vague if it were impossible for the picketers to determine the 300-foot boundary with any precision and if the lack of a scienter element left picketers strictly liable for any violation. A law that requires a person to "steer far wider of the unlawful zone" because of doubt about the boundary cannot stand. *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972) (citations omitted).

In this case, the district court found that picketers could walk up to the house and measure out the 300 feet, as long as there was no "No Trespassing" sign at the targeted residence. The court also suggested that picketers could use "an inexpensive hand-held rangefinder, topographical maps, or publicly available land records" to measure the 300 feet. And, failing all other options, would-be picketers could measure the distance elsewhere and then "estimate very ably" the distance to the house.

The district court overstated the options. We disagree that picketers, already unwelcome guests, should be forced to march across the targeted resident's lawn to measure the distance, even if they might do so without violating trespassing laws. Such a "solution" promises to escalate tension at the picket site. Furthermore, while a rangefinder would help a would-be picketer determine the distance with precision, the Court has been cautious of options that would require money as an entrée to speech. *See, e.g.*, *Murdock v. Pennsylvania*,

319 U.S. 105, 113 (1943) (striking down a $1.50 licensing fee because it served as a "flat tax" levied on "the enjoyment of a right granted by the federal constitution"); *Fernandes v. Limmer*, 663 F.2d 619, 632 (5th Cir. 1981) ("Were states permitted to tax First Amendment activities, the eventual result might be the total suppression of all those voices whose pockets are not so deep.").

**[16]** Plaintiffs presented uncontroverted evidence that no public record contained a setback distance so that would-be picketers could measure *precisely* the 300-foot boundary. But assessor's maps available from the County Tax Assessor's office do show lot sizes. While the maps do not indicate exactly where the residence sits on the lot, a would-be picketer, with the lot map in hand, should be able to estimate the boundary with some level of precision. A statute is not unconstitutionally vague unless it requires would-be speakers to "steer *far* wide" of the boundary — a result we believe is unlikely here. Accordingly, we will not strike down the ordinance on vagueness grounds.

## D.   California Constitutional Claims

**[17]** Plaintiffs argue that they should be granted relief under the California Constitution as well. The California courts have noted that protection of expressive activity under the California Constitution is in some respects broader than the protection provided by the First Amendment of the United States Constitution. *See Kasky v. Nike, Inc.*, 45 P.3d 243, 255 (Cal. 2002). Plaintiffs have not, however, pointed to any specific protection provided by the California Constitution or the California courts that affects our analysis. Accordingly, we decline to grant Plaintiffs' claims on state law grounds.

## III.   Conclusion

For the foregoing reasons, the district court's decision is AFFIRMED.