EBEL, Circuit Judge.
Plaintiff Tab Bonidy, who has a concealed-carry permit under Colorado law, sued the United States Postal Service (USPS) challenging 39 C.F.R. § 232.10) (hereinafter “the regulation”), which pro- *1123 Mbits the storage and carriage of firearms on USPS property. Bonidy claims the regulation is unconstitutional as applied to him because it violates his Second Amendment right to (1) bring his gun into the United States Post Office building in Avon, Colorado (hereinafter “post office building”), and (2) store the gun in the post office parking lot while he picks up his mail. The district court ruled, on cross-motions for summary judgment, that the regulation is constitutional insofar as it prohibits guns in the building, but unconstitutional insofar as it prohibits guns in the parking lot. Both parties appeal.
We have jurisdiction under 28 U.S.C. § 1291 and conclude that the regulation is constitutional as to all USPS property at issue in this case, including the Avon Post Office parking lot, because the Second Amendment right to bear arms has not been extended to “government buildings.” Government buildings, in this context, includes the government owned parking lot connected to the U.S. Post Office. Alternatively, even if we were to conclude that the parking lot did not qualify as a “government building,” we would uphold this regulation as constitutional as applied to the parking lot under independent intermediate scrutiny.
I. FACTS
Tab Bonidy lives in a rural area near Avon, Colorado. He has a concealed carry permit under Colorado law and regularly carries a handgun for self-defense. Avon’s post office does not deliver mail to residents’ homes; instead, it provides mailboxes in the post office building, and residents travel there to collect their mail. The post office lobby, where residents’ mailboxes are located, is open to the public at all times. The post office does not regularly employ any security officers.
The post office building is a standalone structure with two adjacent parking lots: one is a restricted-access employee lot, and the other is an unsecured customer lot. A sign indicates that the customer lot is USPS property. There are also several city-owned public parking options nearby: five spots on the street in front of the post office, and three parking lots.
Because of the USPS firearms restriction, Bonidy has an assistant pick up his mail at the post office. Bonidy’s attorney sent a letter to the USPS’s General Counsel asking whether Bonidy would be prosecuted under the regulation if he carried his firearm into the post office building or stored it in his vehicle in the post office parking lot while collecting his mail. The USPS General Counsel replied in the affirmative, stating that “the regulations governing Conduct on Postal Property prevent [Bonidy] from carrying firearms, openly or concealed, onto any real property under the charge and control of the Postal Service.” ApltApp. A20.
Bonidy sued for declaratory and injunc-tive relief, claiming that the regulation violated his Second Amendment right to bear arms for self-defense. After full discovery, Bonidy and the USPS filed cross-motions for summary judgment. The district court held that the regulation is constitutional insofar as it pertains to concealed firearms, based on Peterson v. Martinez, 707 F.3d 1197 (10th Cir.2013), which held that the Second Amendment protection does not include a right to carry a concealed firearm outside the home. The district court, applying a presumption of validity to the Postal Regulation and apparently applying a form of intermediate scrutiny, concluded that the regulation was constitutional as it applied to the post office building itself, but it was unconstitutional at least insofar as it prohibited Boni-dy from carrying a gun in his car in the parking lot consistent with his Concealed Carry Permit. The government appealed *1124 the ruling invalidating 39 C.F.R. § 232.1(i) insofar as carrying a gun in a car in the parking lot was concerned and Bonidy cross appealed, arguing that 39 C.F.R. § 232.1(i) was unconstitutional both with regard to the postal building itself and the adjacent postal office parking lot.
II. STANDARD OF REVIEW
We review the district court’s grant of summary judgment and interpretation of the Second Amendment de novo. See Peterson, 707 F.3d at 1207; United States v. Huitron-Guizar, 678 F.3d 1164, 1165 (10th Cir.2012). “Summary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Peterson, 707 F.3d at 1207.
III. ANALYSIS
Peterson, of course, controls our panel, and in accordance with that opinion we affirm the district court’s ruling that 39 C.F.R. § 232.1(£) is constitutional insofar as it pertains to concealed carry, both in the postal building itself and the adjacent parking lot. With regard to open carry, we affirm the district court’s ruling upholding the constitutionality of 39 C.F.R. § 232.1(0 insofar as the postal building itself is concerned and we reverse the district court’s ruling invalidating 39 C.F.R. § 232.1(0 insofar as it pertains to open carry in the postal office adjacent parking lot.
With regard to the issue of open carry, we are constrained by previous Tenth Circuit precedent. Our precedent on this matter is anchored in a single sentence contained in District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) which extended Second Amendment rights to private citizens for the first time in U.S. Supreme Court precedent, holding that Washington D.C.’s ban on handgun possession in the home violates the Second Amendment. Id., at 635, 128 S.Ct. 2783.
In addition to the narrowness of that holding, the United States Supreme Court then proceeded to emphasize the narrowness by saying,
[Njothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial side of arms.[1]
Heller, 554 U.S. at 626-27, 128 S.Ct. 2783.
Although one could argue that language was dicta, it was in fact an important emphasis upon the narrowness of the holding itself and it directly informs the holding in that case.
Then, to underscore the importance of that language and to remove any doubt about the care that went into it and its importance in understanding the holding in Heller, several years later the Court repeated that exact same language, with forceful affirmation. In McDonald v. City of Chicago, Illinois, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), a plurality of the Court said:
We made it clear in Heller that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill,’ ‘laws forbidding the carrying of firearms in sensitive *1125 places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.’ Id., at 626-27, 128 S.Ct., at 2816-2817. We repeat those assurances here. Despite municipal respondent’s doomsday proclamations, incorporation does not imperil every law regulating firearms.
Id. at 786, 130 S.Ct. 3020 (emphasis added).
Bonidy suggests that this language is mere dicta and suggests that we should disregard it. But, we reject that suggestion. First, we have previously held that we are “bound by Supreme Court dicta almost as firmly as by the Courts’ outright holdings, particularly when the dicta is recent and not enfeebled by later statements.” United States v. Serawop, 505 F.3d 1112, 1122 (10th Cir.2007); Surefoot LC v. Sure Foot Corp., 531 F.3d 1236, 1243 (10th Cir.2008). Second, this dicta squarely relates to the holdings itself, and therefore is assuredly not gratuitous. Third, this dicta was subsequently repeated largely verbatim and reendorsed by the Court several years later in McDonald, 561 U.S. at 925, 130 S.Ct. 3020.
Since Heller and McDonald we have quoted that same sentence and considered ourselves bound by it. See Peterson v. Martinez, 707 F.3d 1197 (10th Cir.2013) (upholding concealed carry restrictions). Thus, our own precedent causes us to conclude that the Second Amendment right to carry firearms does not apply to federal buildings, such as post offices. Therefore, we uphold the District Court’s ruling that 39 C.F.R. § 232.1(i) is constitutional as to the post office building itself.
Next, we address the application of that prohibition on the U.S. Postal Service parking lot adjacent to the building itself.
We conclude, on the facts of this case, that the parking lot should be considered as a single unit with the postal building itself to which it is attached and which it exclusively serves. There is, in fact, a drop-off box for the post office in the parking lot, meaning that postal transactions take place in the parking lot as well as in the building. Thus, the previously quoted language in Heller applies with the same force to the parking lot as to the building itself.
However, because the parking lot presents a closer question, we offer an equal and alternative basis for our holding upholding 39 C.F.R. § 232.1(¿) as it applies to the parking lot. This alternative holding assumes that the right to bear arms recognized in Heller in the home would also apply, although with less force, outside the home. This seems like a reasonable assumption because the Second Amendment right is “to keep and bear” arms, and “bear” certainly implies the possibility and even the likelihood that the arms will be carried outside the home. Also, the Second Amendment right recognized by the Supreme Court is predicated on the right of self-defense. Heller, 554 U.S. at 595, 128 S.Ct. 2783. The need for self-defense, albeit less acute, certainly exists outside the home as well. Moore v. Madigan, 702 F.3d 933, 935-40 (7th Cir.2012).[2] However, it is not necessary for us to make a definitive ruling on this because, as noted below, even assuming a right to bear firearms outside the home, and even if, contrary to our ruling above, the parking lot is not itself considered part of a *1126 “government building,” we conclude that any such right Bonidy might possess was not violated here by 39 C.F.R. § 232.1(l) precluding him from possessing a firearm in the postal parking lot.
If Second Amendment rights apply outside the home, we believe they would be measured by the traditional test of intermediate scrutiny. See United States v. Reese, 627 F.3d 792, 802 (10th Cir.2010) (applying intermediate scrutiny to a Second Amendment as-applied challenge to § 922(g)(8)).
Intermediate scrutiny makes sense in the Second Amendment context. The right to carry weapons in public for self-defense poses inherent risks to others. Firearms may create or exacerbate accidents or deadly encounters, as the longstanding bans on private firearms in airports and courthouses illustrate. The risk inherent in firearms and other weapons distinguishes the Second Amendment right from other fundamental rights that have been held to be evaluated under a strict scrutiny test, such as the right to marry and the right to be free from viewpoint discrimination, which can be exercised without creating a direct risk to others. Intermediate scrutiny appropriately places the burden on the government to justify its restrictions, while also giving governments considerable flexibility to regulate gun safety.
The USPS is a state actor rather than a private business, so its actions must comply with- the Constitution. However, the fact that the government is acting in a proprietary capacity, analogous to that of a person managing a private business, is often relevant to constitutional analysis. The government often has more flexibility to regulate when it is acting as a proprietor (such as when it manages a post office) than-when it is acting as a sovereign (such as when it regulates private activity unconnected to a government service).
In Commerce Clause cases, for example, a “basic distinction” exists “between States as market participants and States as market regulators.” Reeves, Inc. v. Stake, 447 U.S. 429, 436, 100 S.Ct. 2271, 65 L.Ed.2d 244 (1980) (emphasis added). Similar distinctions exist with respect to the First Amendment. See, e.g., Lehman v. City of Shaker Heights, 418 U.S. 298, 302-04, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974) (holding that a city’s decision to exclude political advertisements from its buses was permissible under the First Amendment because the city was acting as a proprietor); Adderley v. Florida, 385 U.S. 39, 47-48, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966) (“The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated.”). That distinction between government as market participant and government as market regulator is relevant here as well.
The USPS is an enormous, complex business. If the USPS were a private company, it would be in the top 50 of the Fortune 500. In 2013 alone, it processed over 158 billion pieces of mail, about 40% of the world’s mail volume, and had a revenue of $67.3 billion. It employed over half a million Americans, managed a fleet of more than 211,000 vehicles, had more than 31,000 retail offices across the United States, processed more than 5 million passports, and issued around 95 million money orders. See United States Postal Service, Postal Facts 20H.
As a government-owned business acting as a proprietor rather than as a sovereign, the USPS has broad discretion to govern its business operations according to the rules it deems appropriate. In light of that discretion, the contrast between the regulation challenged here and the bans struck down in Heller and McDonald is stark. Those bans regulated wholly pri *1127 vate activity and applied directly to every citizen within the respective jurisdictions. By contrast, the regulation challenged here applies only to discrete parcels of land owned by the U.S. Postal Service, and affects private citizens only insofar as they are doing business with the USPS on USPS property. And the regulation is directly relevant to the USPS’s business objectives, which include providing a safe environment for its patrons and employees.
This regulation, 39 C.F.R. § 232.1(l), is substantially related to the USPS’s important interest in creating a safe environment for its patrons and employees. As noted, the USPS has considerable flexibility when operating as a proprietor of a state-owned business rather than regulating private activity. Our conclusion is further bolstered by the fact that the regulation applies only to a very limited spatial area (that is, USPS facilities) and affects private citizens only insofar as they are doing business with the USPS on USPS property.
Of course, administrative convenience and economic cost-saving are not, by themselves, conclusive justifications for burdening a constitutional right under intermediate scrutiny. However, such considerations are relevant to our conclusion that the USPS may create administratively manageable, uniform regulations that apply to all USPS property and customers, so long as these rules are substantially related to the USPS’s important interest in employee and customer safety, which tests we find to be met here.
Bonidy argues that the USPS regulation is overinclusive with respect to its safety objectives. Unlike most post offices, the Avon post office does not provide residential delivery, so patrons must personally pick up their mail (or have someone else do so on their behalf, as Bonidy does). The lobby is open to the public at all times. Bonidy argues that because the building is relatively unsecured, and there is usually no security guard on the premises, the regulation forces him to “risk his life to pick up his mail.” Bonidy argues that the USPS should have devised site-specific safety policies to compensate for customers’ desire to carry firearms at post offices in rural areas like Avon.
But the USPS is not required to tailor its safety regulations to the unique circumstances of each customer, or to craft different rules for each of its more than 31,000 post offices, or to fashion one set of rules for its parking lots and another for its buildings and perhaps another for the steps leading up to the building. Intermediate scrutiny does not require a perfect fit between a rule’s objectives and the circumstances of each individual subject to the rule. To require the USPS to tailor a separate gun policy for each of its properties or indeed for its many diverse customers would present an impossible burden not required by the intermediate scrutiny test.
Bonidy has a licensed concealed-carry permit under Colorado law. But there is no national registry of firearms carry permits. Gun carry laws differ in different states and localities, and such laws vary widely in their requirements and level of enforcement. Consistent with the Supremacy Clause, the USPS and other federal agencies need not stop every customer at the government’s property lines to inquire whether each has a valid, active firearms license under state or local law. Local and state laws do not trump federal laws, and those local and state regulations do not give Bonidy a right to openly carry a firearm on sensitive federal property. Thus, Bonidy’s right to carry in Colorado does not undermine the constitutionality of this USPS regulation.
*1128 The USPS, as a federal business, may create and enforce a single, national rule regarding carrying firearms onto postal property. Such regulations will inevitably impact some individuals more than others. However, an alternative system involving piecemeal exceptions and individual waivers would be wasteful and administratively unworkable, and would raise entirely new problems related to fairness, official discretion, and equal administration of the laws. There is no reason to believe that a regulatory regime in which ad hoc exceptions are made for people like Mr. Bonidy would be superior, as a matter of sound policy or constitutional law, to a single bright-line rule such as the regulation challenged here. Under a more nuanced or discretionary regime, problems of perceived unfairness or unreasonableness— and accompanying litigation — would likely multiply, not disappear. As the Supreme Court has explained:
If Congress and the Postal Service are to operate as efficiently as possible a system for the delivery of mail which serves a Nation extending from the Atlantic Ocean to the Pacific Ocean, from the Canadian boundary on the north to the Mexican boundary on the south, it must obviously adopt regulations of general character having uniform applicability throughout the more than three million square miles which the United States embraces. In so doing, the Postal Service’s authority to impose regulations cannot be made to depend on ... factors that may vary significantly within a distance of less than 100 miles.
U.S. Postal Serv. v. Council of Greenburgh Civic Associations, 458 U.S. 114, 138, 101 S.Ct. 2676, 69 L.Ed.2d 517 (1981).
We do not second-guess the wisdom of the USPS’s determination that its business operations will be best served by a simple rule banning all private firearms from postal property; our role is limited to inquiring whether that rule violates the Constitution, and we conclude that it does not. The regulation is sufficiently tailored to the USPS’s important interest in safety under an intermediate scrutiny analysis.
The USPS is not constitutionally required to tailor a separate gun carry policy with respect to each of its properties. It suffices that the regulation as a whole is substantially related to the USPS’s important interest in patron and employee safety. cf., e.g., Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 419, 43 S.Ct. 158, 67 L.Ed. 322 (1922) (“Ordinarily a police regulation, general in operation, will not be held void as to a particular property, although proof is offered that owing to conditions peculiar to it the restriction could not reasonably be applied.”).
Post office parking lots, including Avon’s, often include collection boxes, so postal business extends beyond the walls of the building. Further, patrons must often pass through a USPS-owned parking lot to get to the door of a post office building. Also, the security of the postal building itself is integrally related to the security of the parking lot adjacent to it. The security of the postal building and the security of postal services within the structure are integrally connected with the security of the adjacent lot as well. Cash and other items of considerable value are often shipped through the postal services and if guns are considered a security risk in the building, they present a similar risk while patrons are transporting those materials to or from an immediately adjacent government owned parking lot. The postal building and the parking lot are operated as a single integrated facility. In any event, the judgment, made by the postal service in enacting and applying 39 C.F.R. § 232.1(Z), is constitutionally defensible under intermediate scrutiny. The USPS may constitutionally create a single rule *1129 pertaining to guns governing both its buildings and parking lots.
IV. CONCLUSION
Accordingly, we AFFIRM the district court order to the extent it upheld 39 C.F.R. § 232. l(i) as applied to the Avon post office building. We REVERSE the district court order to the extent it found that regulation unconstitutional as applied to Bonidy’s request to be able to carry a gun in his vehicle onto the Avon post office parking lot. We REMAND for entry of judgment consistent with this opinion.

. The Supreme Court attached a footnote immediately after this language saying, "We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive.”

. The Court did stress that the right to bear arms for self-defense is not a “right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.” Heller, 554 U.S. at 626, 128 S.Ct. 2783. So it is clear that this right is neither absolute nor unqualified.