# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 13, 2019        Decided July 19, 2019

No. 15-3015

UNITED STATES OF AMERICA,
APPELLEE

v.

RODNEY CLASS,
APPELLANT

On Remand from the
Supreme Court of the United States

*Leonard R. Powell* argued the cause for appellant. With him on the briefs was *Jessica Ring Amunson*.

*Lauren R. Bates*, Assistant U.S. Attorney, argued the cause for appellee. With her on the briefs were *Jesse K. Liu*, U.S. Attorney, and *Elizabeth Trosman*, *Chrisellen R. Kolb*, *Jeffrey Pearlman*, and *Valinda Jones*, Assistant U.S. Attorneys.

Before: GRIFFITH and SRINIVASAN, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Federal law prohibits the possession of firearms on the grounds of the United States

Capitol. 40 U.S.C. § 5104(e). Rodney Class pleaded guilty to violating this law after parking a car containing three guns on a street near the Capitol. He now argues that, as applied to his case, the law violates the Second Amendment and the Due Process Clause of the Fifth Amendment. These claims lack merit, and we affirm his conviction.

I

In May 2013, Rodney Class drove to the United States Capitol in Washington, D.C. He parked his car in one of the many angled parking spots that line the 200 block of Maryland Avenue SW (the "Maryland Avenue lot"). That parking spot sits just north of the United States Botanic Gardens and approximately 1,000 feet from the entrance to the Capitol itself. The street is accessible to the general public, but the parking spot Class used is reserved on weekdays (like the Thursday he parked there) for employees of the House of Representatives. The parking lot is marked by a sign indicating a permit is required. Class locked his car and walked inside the Capitol. Upon his return, several police officers were peering into his car. One asked Class if he had any weapons inside, and he answered that he did. The officer told Class that it was illegal to have weapons on Capitol Grounds and took Class to Capitol Police headquarters. When the car was searched, three firearms were found.

Class was indicted for possession of a firearm while on the grounds of the Capitol, in violation of 40 U.S.C. § 5104(e)(1) (the "Capitol Grounds ban"). He filed several motions seeking to dismiss the indictment, arguing, *inter alia*, that the Capitol Grounds ban violated his Second Amendment right to bear arms. The district court denied these motions from the bench, holding that the Capitol Grounds ban "does not burden conduct protected by the Second Amendment," because "laws

prohibiting individuals from carrying firearms in sensitive places, such as government buildings, are presumptively lawful." Tr. of Mot. Hr'g at 18, *United States v. Class*, No. 1:13-cr-0253-1 (D.D.C. Oct. 27, 2014), Dkt. No. 193. Class subsequently entered an unconditional guilty plea.

Class appealed his conviction on both constitutional and statutory grounds. *United States v. Class*, No. 15-3015, 2016 WL 10950032, at *1 (D.C. Cir. July 5, 2016). We affirmed his conviction, holding that his unconditional guilty plea waived his right to appeal on those grounds. *Id.* at *2. The Supreme Court reversed, holding that Class did not waive his constitutional claims because they challenged the government's very power to make his conduct criminal. *Class v. United States*, 138 S. Ct. 798, 805 (2018).

On remand, we now consider the merits of those claims: first, that the ban as applied to Class's conduct violates his Second Amendment right to bear arms, and second, that the ban violates the Fifth Amendment's Due Process Clause because the law defining the Capitol Grounds is complicated enough that Class lacked notice that he was on them. Because these claims present questions of law, we review them de novo. *United States v. Yakou*, 428 F.3d 241, 246 (D.C. Cir. 2005).[1] The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

II

---

[1] The government argued during Class's first appeal that we should review his due process claim for plain error because he had not raised it in the district court. *See* Gov't. Br. 29-30. On remand, the government has not revived this argument, and agrees with Class that our review of his constitutional claims is de novo. *See* Suppl. Gov't. Br. 31.

To evaluate the constitutionality of firearms regulations, we first determine "whether a particular provision impinges upon a right protected by the Second Amendment." *Heller v. District of Columbia* (*Heller II*), 670 F.3d 1244, 1252 (D.C. Cir. 2011). If it does, we ask "whether the provision passes muster under the appropriate level of constitutional scrutiny." *Id.* Because we conclude that the Capitol Grounds ban does not "impinge[] upon a right protected by the Second Amendment," we do not reach the second question.

The Second Amendment protects the right to own and carry a firearm outside the home. *Wrenn v. District of Columbia*, 864 F.3d 650, 657-58 (D.C. Cir. 2017); *see District of Columbia v. Heller* (*Heller I*), 554 U.S. 570, 635 (2008). But the right is not unlimited. The Supreme Court has been careful to note that "longstanding prohibitions" like "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings" remain "presumptively lawful." *Heller I*, 554 U.S. at 626, 627 n.26. A challenger may rebut this presumption only by "showing the regulation [has] more than a de minimis effect upon his right" to bear arms. *Heller II*, 670 F.3d at 1253.

With respect to the Capitol itself, there are few, if any, government buildings more "sensitive" than the "national legislature at the very seat of its operations." *Jeanette Rankin Brigade v. Chief of the Capitol Police*, 421 F.2d 1090, 1093 n.3 (D.C. Cir. 1969). And tragically, gunmen have targeted the Capitol before. Francis Clines, *Capitol Hill Slayings: The Overview; Gunman Invades Capitol, Killing 2 Guards*, N.Y. TIMES (July 25, 1998), https://www.nytimes.com/1998/07/25/us/capitol-hill-slayings-the-overview-gunman-invades-capitol-killing-2-guards.html.

Class, however, was found with a firearm in the Maryland Avenue parking lot, not the Capitol itself. He argues that *Heller I* refers only to bans on possession "*in* sensitive places like government buildings," and the "Maryland Avenue outdoor parking lot, like most of the Capitol Grounds, is certainly not 'in a government building.'" Suppl. Class Br. 22. As a result, he claims, the ban is "outside of any presumption of constitutionality that applies only 'in' sensitive places." *Id.* This argument slices *Heller I* too thin. The Supreme Court was careful to note that *Heller I*'s list of "presumptively lawful" regulations was not exhaustive, *see* 554 U.S. at 627 n.26, and we have little trouble concluding that the same security interests which permit regulation of firearms "in" government buildings permit regulation of firearms on the property surrounding those buildings as well. Indeed, Class appears to concede this point elsewhere in his brief, agreeing with the government that the White House lawn, for instance, is "sensitive" for purposes of the Second Amendment. *See* Suppl. Class Br. 25 n.7.

As for the Maryland Avenue parking lot, although it is not a government building, we conclude that it is sufficiently integrated with the Capitol for *Heller I*'s sensitive places exception to apply. Accordingly, we conclude that the Second Amendment does not give Class the right to bear arms in the Maryland Avenue lot. Several facts lead us to this determination.

First, though it is open to the public, the Maryland Avenue parking lot may be used during working hours only by Capitol employees with a permit. This makes the area a potential stalking ground for anyone wishing to attack congressional staff and disrupt the operations of Congress. The operation of the national legislature depends not only on the ability of members of Congress and their staff to conduct business inside

the Capitol, but also on their ability to freely and safely travel to and from work. The same special security concerns that apply to the employees while in the Capitol apply when they walk to and from their cars on Capitol property.

Second, the lot is close to the Capitol and legislative office buildings. Class possessed a firearm less than 1,000 feet away from the entrance to the Capitol, and a block away from the Rayburn House Office Building. Although there is surely some outer bound on the distance Congress could extend the area of protection around the Capitol without raising Second Amendment concerns, Congress has not exceeded it here.

Finally, as the owner of the Maryland Avenue lot, the government—like private property owners—has the power to regulate conduct on its property. *See Adderly v. Florida*, 385 U.S. 39, 47 (1966) (observing in the free-speech context that the government, "no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated"); *cf. Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1126 (10th Cir. 2015) (observing that when the U.S. Postal Service acts "as a proprietor rather than as a sovereign, [it] has broad discretion to govern its business operations according to the rules it deems appropriate").

In sum, because the Maryland Avenue lot has been set aside for the use of government employees, is in close proximity to the Capitol building, and is on land owned by the government, we consider the lot as a single unit with the Capitol building, and conclude that the lot is a "sensitive" place where firearms prohibitions are presumptively lawful. *Accord id.* at 1125-28 (finding that a post office parking lot is "sensitive" for Second Amendment purposes); *United States v. Dorosan*, 350 F. App'x 874, 875 (5th Cir. 2009) (same).

Class raises two counterarguments. First, he tries to distinguish the Maryland Avenue lot from other outdoor government property that is protected by security or not accessible to the public. In support, he points to language from *Wrenn*, where we concluded that the Second Amendment "enables self-defense at least against the level of threat *generally* faced by those covered by the Amendment: responsible and law-abiding citizens." 864 F.3d at 664. Class argues that the need to have a gun for self-defense is lessened in places that are off-limits to the public (like the White House lawn) or protected by metal detectors and security guards (like the Capitol building). Because neither is true of the Maryland Avenue parking lot, Class contends that law-abiding citizens need to be able to carry firearms for self-defense. Suppl. Class Reply 4.

Class reads too much into *Wrenn*. That case raised the question of whether the right to bear arms extended outside the home and who could exercise that right; this case raises the question of where outside the home a person authorized to carry a firearm may do so. For this inquiry, we do not look to the "level of threat" posed in a sensitive place. Many "schools" and "government buildings"—the paradigmatic "sensitive places" identified in *Heller I*—are open to the public, without any form of special security or screening. In an unsecured government building like a post office or school, the risk of crime may be no different than in any other publicly accessible building, yet the *Heller I* opinion leaves intact bans on firearm possession in those places. As one court put it, those places are "sensitive" for purposes of the Second Amendment because of "the people found there" or the "activities that take place there." *GeorgiaCarry.Org, Inc. v. Georgia*, 764 F. Supp. 2d 1306, 1319 (M.D. Ga. 2011)*, aff'd*, 687 F.3d 1244 (11th Cir. 2012).

Next, Class contends that because the Capitol Grounds ban was only extended to the Maryland Avenue parking lot in 1980, with respect to that lot, the ban is not the sort of "longstanding" regulation that is "presumptively lawful" under *Heller I*. *See* Suppl. Class Br. 25-26. It is true, as we explained in *Heller II*, that "[a] requirement of newer vintage is not . . . presumed to be valid." 670 F.3d at 1253. Class's argument, however, misinterprets what it means for a regulation to be "longstanding." Under Class's reading, the ban *in that location* must have been longstanding. But this makes little sense when viewed through the language of *Heller I*, which spoke generally of "schools" and "government buildings." 554 U.S. at 626-27. The relevant inquiry is whether a particular *type* of regulation has been a "longstanding" exception to the right to bear arms. *See Heller II*, 670 F.3d at 1253-56. A new post office is no less a government building than one built in 1789, just as a new wing of the Capitol is still part of that building.

Because the Maryland Avenue parking lot is a sensitive place, the ban on carrying firearms there is "presumptively lawful." *Heller I*, 554 U.S. at 627 n.26. To rebut that presumption, Class must show that the ban has "more than a de minimis effect upon his right" to bear arms. *Heller II*, 670 F.3d at 1253. He cannot. Class contends that the Capitol Grounds ban prevents him from exercising his right to self-defense while moving about the District, but we rejected a similar argument in *Wrenn*, observing:

> [B]ans on carrying only in small pockets of the outside world (*e.g.*, near "sensitive" sites) impose only lightly on most people's right to "bear arms" in public. As Judge Posner writes: "[W]hen a state bans guns merely in particular places, such as public schools, a person can preserve an undiminished right of self-defense by not entering those places."

864 F.3d at 662 (quoting *Moore v. Madigan*, 702 F.3d 933, 940 (7th Cir. 2012)) (citation omitted). The Maryland Avenue parking lot is just the kind of "small pocket of the outside world" where a ban imposes only "lightly" on the right to carry a weapon in the District of Columbia. If Class "wanted to carry a gun in his car but abide by the ban," he could have done so but parked elsewhere. *See Dorosan*, 350 F. App'x. at 876.

Class argues that the Capitol Grounds, which include almost 300 acres of the District, are not a small pocket of the outside world, and claims that the ban on possession makes it "practically impossible to travel to other areas around the Capitol with a firearm for self-defense." Suppl. Class Reply 8. We see no such problem. While this portion of Maryland Avenue *could* be used to travel from one part of the District to another, nothing about the ban prevents a person who wishes to carry a firearm for self-defense from taking an alternate route that avoids the Capitol Grounds.

Class counters by arguing that the boundaries of the Capitol Grounds are not publicly posted and are therefore "indistinguishable from nearby areas where firearms are permitted." Suppl. Class Br. 14. As a result, he claims that the fear of violating the ban by accident impinges on his ability to carry a firearm for self-defense even in areas of the District that are not technically covered by the ban. To the extent that he complains about lack of notice, we address that issue in our discussion of his due process claim. For purposes of his Second Amendment claim, the Maryland Avenue lot is "distinguishable" from other nearby areas because Congress has set apart the Capitol Grounds from the rest of the district for the use of the national legislature.

III

Class next argues that he lacked notice his conduct was criminal because of how difficult it is to determine the boundaries of the Capitol Grounds. Couching his challenge in terms of vagueness, Class suggests that absent such notice, his conviction violates the Due Process Clause of the Fifth Amendment. We disagree.

The government violates the Due Process Clause when it "tak[es] away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015). Most vagueness challenges involve assertions of "indeterminacy," in which the defendant claims that a criminal statute is so "shapeless" that even a person aware of the law cannot know what conduct is prohibited. *Id.* at 2558, 2560. The text of the Capitol Grounds ban, in contrast, is quite clear: "An individual . . . may not carry on or have readily accessible . . . on the Grounds or in any of the Capitol Buildings a firearm." 40 U.S.C. § 5104(e). Indeed, Class does not—and could not—argue that any of these terms are "indeterminate" or "shapeless." An ordinary citizen would readily understand from the text of the statute that he may not carry a firearm on the Capitol Grounds or inside the Capitol. Nor does Class argue that the boundaries of the Capitol Grounds are "shapeless." The metes and bounds of the Capitol Grounds are precisely defined: with a map of the city and the appropriate legal references, it can be determined with certainty that the 200 block of Maryland Avenue SW is subject to the ban.

Confronted with a clear statute, Class takes a different approach. He argues that, regardless of the precision of the text,

the structure of the statute and lack of signage identifying the Maryland Avenue lot as a restricted area makes it "exceedingly difficult" for an ordinary citizen to actually figure out that the parking lot is part of the Capitol Grounds. Suppl. Class Br. 33. So difficult, according to Class, that an armed person in the lot lacks fair notice that his conduct is prohibited. In support of his position, Class relies on the circuitous route an individual must take to determine whether the lot is part of the Capitol Grounds. First, a person must look to the U.S. Code, which defines the grounds by reference to a 1946 map on file in the Office of the Surveyor of the District of Columbia. 40 U.S.C. § 5102. The map does not contain the Maryland Avenue lot. However, the statute goes on to say that the boundaries of the Grounds "includ[e] all additions added by law" after the map was recorded. *Id.* So the second step a person must take is to find Public Law 96-432, which in 1980 expanded the Grounds to include "that portion of Maryland Avenue Southwest from the west curb of First Street Southwest to the east curb of Third Street Southwest." Act to Amend the Act of July 31, 1946, as amended, Relating to the United States Capitol Grounds, and for Other Purposes, Pub. L. No. 96-432, (5), 94 Stat. 1851, 1851 (1980). The Maryland Avenue lot falls squarely within this area, but Class argues that the combination of these steps and lack of other identifying features puts determining the boundaries of the Capitol Grounds "beyond the ken of someone of ordinary intelligence and diligence." Suppl. Class Br. 34.

We disagree. It is a bedrock principle that "[c]itizens are charged with generally knowing the law." *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017). Fair notice usually requires a legislature to "do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." *Id.* (quoting *Texaco, Inc. v. Short*, 454 U.S. 516, 532 (1982)). Although determining that the ban applies to the Maryland

Avenue lot is not completely straightforward, we cannot say that the law is so difficult to understand that it violates the Constitution, for "perfect clarity and precise guidance have never been required even of regulations that restrict [protected] activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989).

The statutory provisions at issue here were enacted and published decades ago. *See* Act of Oct. 20, 1967, Pub. L. No. 90-108, 81 Stat. 275, 276 (banning firearms on Capitol Grounds); Pub. L. No. 96-432 (extending Grounds to include the Maryland Avenue lot). The laws do not use complicated phrasing or specialized vocabulary, referring only to the names of streets that appear on road signs and which can be located on widely available maps of the District. And though it is true that the relevant provisions of the U.S. Code do not themselves reference the Maryland Avenue lot, Class points to no case in which a court has held that due process turns on whether a law was codified or merely enacted and published as a Public Law. Class's argument has even less force when considered alongside the version of the U.S. Code published by the Government Printing Office, which includes as an appendix to the text of 40 U.S.C. § 5104 a section entitled "Changes in United States Capitol Grounds." 40 U.S.C. § 5104 (2012). That section contains the text of enactments altering the boundaries of the Grounds, including the 1980 amendment that added the Maryland Avenue lot. *Id.*

The only case that Class identifies in which a court has struck down a law due to the difficulty of determining geographic boundaries is *Doe v. Snyder*, which involved a statute that prohibited registered sex-offenders from coming within 1,000 feet of "school property" used for "educational instruction" or "sports or other recreational activities." 101 F. Supp. 3d 672, 682-83 (E.D. Mich. 2015). The district court

concluded that the law violated due process because it was unclear how to measure the 1,000 feet (*i.e.*, from the entrance to the building or from the edge of school property lines) and it would be "difficult for . . . registrants to parse through school-owned real property [records]" to determine which parcels were used for covered activities. *Id.* at 682-85. We are of course not bound by the reasoning of that district court, but in any event, *Doe* is easily distinguishable. The Capitol Grounds are defined by a map and a specific list of intersections and streets that are part of the public law. A citizen concerned about violating the ban need not make detailed measurements, sort through voluminous real estate records, or speculate about the uses of various parcels of land. He must simply, as is the case with any criminal law, open the statute book—even if here he may need two.

This case more closely resembles *Klein v. San Diego County*, 463 F.3d 1029, 1039 (9th Cir. 2006), in which the Ninth Circuit upheld a ban on picketing within 300 feet of a dwelling. That court conceded that the ordinance might be unconstitutional "if it were impossible for the picketers to determine the 300-foot boundary with any precision." *Id.* But maps showing where dwellings were located were available in the County Tax Assessor's office, and a "would-be picketer, with the lot map in hand," could "estimate the boundary with some level of precision." *Id.* Indeed, the Capitol Grounds ban asks even less of a would-be visitor to the Capitol, because no estimation or measurement is required.

Class nevertheless resists the conclusion that the law provides sufficient notice. He argues that even if the Capitol Grounds ban is not impossible to understand, a heightened level of review is applicable here and requires us to strike down the law. He suggests this is so because "[t]he degree of vagueness that the Constitution tolerates—as well as the

relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). Class is correct that our analysis must be more searching in cases in which a law imposes criminal penalties, "threatens to inhibit the exercise of constitutionally protected rights," and lacks a scienter requirement. *Id.* at 498-99; *see* Suppl. Class Br. 33. Class is also right that all three of those factors triggering additional skepticism are present here. First, the Capitol Grounds ban imposes significant criminal penalties. 40 U.S.C. § 5109. Second, the ban at least implicates the right to bear arms, even if it does not violate the Second Amendment. *Cf. N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 265 (2d Cir. 2015) (applying a "more stringent" vagueness standard to a gun regulation).

The third factor "affecting the clarity that the Constitution demands of a law" is whether a statute possesses a scienter requirement, an inquiry that, at least in this appeal, needs some explanation. *Hoffman Estates*, 455 U.S. at 499. "Scienter" is "the degree of knowledge sufficient to 'mak[e] a person legally responsible for the consequences of his or her act or omission.'" *Rehaif v. United States*, 139 S. Ct. 2191, 2195 (2019) (quoting BLACK'S LAW DICTIONARY 1547 (10th ed. 2014)). Here, the district court interpreted the Capitol Grounds ban as requiring knowledge as to the possession of a firearm, but not as to presence on the Capitol Grounds.[2] According to Class, the fact that an armed person who unknowingly wanders onto the grounds could violate the statute counsels against concluding that the law provides sufficient notice of the conduct it proscribes.

---

[2] As we discuss in greater detail below, we are not confronted with the question of whether the district court's interpretation of the statute was correct.

We agree that the district court's determination that the Capitol Grounds ban lacks a scienter requirement means "that the Constitution tolerates" a lesser "degree of vagueness" than would be permissible had the court reached the contrary conclusion. *Hoffman Estates*, 455 U.S. at 498. Indeed, we have relied on the presence of a scienter requirement to uphold laws in the face of vagueness challenges. *See, e.g.*, *Wash. Mobilization Comm. v. Cullinane*, 566 F.2d 107, 118 (D.C. Cir. 1977) (holding that a regulation prohibiting the crossing of a police line comports with the Due Process Clause so long as "the location of the line is clearly indicated and if adequate notice is given"); *accord United States v. Nieves-Castano*, 480 F.3d 597, 603-04 (1st Cir. 2007).

The question on appeal, however, is not whether the more searching standard from *Hoffman Estates* applies. It does. The question on appeal is whether Class's conviction violates the Due Process Clause because of how vague the statute is. It does not. As we noted above, the steps necessary for determining the special status of the Maryland Avenue lot are not the most straightforward. But the statute is sufficiently clear to "give [a] person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Hoffman Estates*, 455 U.S. at 498 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972)). That is ultimately what the Due Process Clause requires, and that standard has been met. *Cf. Klein*, 463 F.3d at 1039 (upholding against a vagueness challenge a picketing ban despite the lack of a scienter requirement).

We note in closing that the lack of a scienter requirement in the ban might raise issues of statutory construction. But Class has waived those arguments. In two cases, including one decided very recently, the Supreme Court has concluded that restrictions on the possession of firearms require proof of

scienter. *Rehaif*, 139 S. Ct. at 2200 ("[T]he Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm."); *Staples v. United States*, 511 U.S. 600, 619 (1994) ("[T]o obtain a conviction, the Government should have been required to prove that [the defendant] knew of the features of his [gun] that brought it within the scope of the [prohibition]."). The parallel is clear: *Rehaif* concerned a ban on possession of a gun by a person with a particular immigration status; *Staples* concerned a ban on possession of a particular type of gun; and this case concerns a ban on possession of a gun in a particular place.

But those cases resolved only "question[s] of statutory construction," not the constitutional right to due process. *Staples*, 511 U.S. at 604; *see Rehaif*, 139 S. Ct. at 2194. That is, *Staples* and *Rehaif* both concluded that Congress had not *intended* to impose criminal penalties for possession of a gun without proof of scienter; neither case addressed whether or not Congress *lacks the power* to impose such penalties. And here, the Supreme Court held only that the claims which survived Class's guilty plea were those that "challenge the Government's power to criminalize" his conduct. *See Class*, 138 S. Ct. at 805. We therefore reiterate our prior holding that Class waived his statutory claims. And to succeed on his constitutional challenge, it is not enough for Class to show that the *best* reading of the law requires proof of scienter. Instead, Class must show that the law is so difficult for the average person to understand that the Constitution *forbids* his conviction without such proof.

He cannot meet that heavy burden. As we discuss above, determining that the ban applies to the Maryland Avenue lot is not a perfectly straightforward exercise, but citizens are presumed to know the law, and the task of ascertaining the

boundaries of the Capitol Grounds is not so difficult that Class's conviction violates the Constitution.

IV

For the foregoing reasons, the judgment of the district court is affirmed.

*So ordered.*